Williams, J.
The grounds upon which it is claimed the judgment below should be reversed, are, (1) that the plaintiffs in error incurred no liability on the bond in suit; or, (2) if they did, they were discharged therefrom by the release of their co-surety; and, (3) the released co-surety was a necessary party to the action.
1. The first of these g’rounds is based, in part, on the terms of the bond, the obligatory provisions of which bind the sureties for the faithful performance, by Mannix, of his duties as trustee of Edward Purcell, when, in fact, he was appointed and qualified as assignee; the claim being, that the duties of Mannix, within the contemplation of the bond, were those only of a trustee appointed under the statute; and, not having- been appointed such a trustee, he received no assets, nor had any *480 duties to perform in that capacity, and hence his default as assignee, was no breach of the condition of the bond. This position is not tenable. While it is undoubtedly the law, that sureties are not liable beyond the plain terms of their engagement-, the rules governing the construction of their contracts in arriving at their terms and scope, are not different from those which are applicable in the interpretation of all written agreements. “It is enough in any written contract that the intent of the party clearly appear, though it be not fully and particularly expressed.” Partridge v. Jones, 38 Ohio St., 377. “When the meaning and intention of the parties are perfectly plain, no grammatical inaccuracy or want of the most appropriate words shall render the instrument unavailing.” Knisely v. Shenberger, 7 Watt’s, 193.
An examination of the bond in question, in the light of the statute under which it was executed, can leave no doubt as to its meaning- and effect. The statute (section 6335, of the Revised Statutes) provides that when any person shall make an assignment “to a trustee,” of any property for the benefit of creditors, it shall be the duty of the assignee to. “enter into a bond, payable to the state, in such sum and with such sureties as shall be approved by the court, conditioned for the faithful performance, by said assignee of his duties according-to law. ” The bond executed by the plaintiffs in error, as sureties of Mannix, recites that, “whereas, by a certain deed of assignment executed by Edward Purcell to John B. Mannix,” on the 4th day of March, 1879, “the said John B. Mannix is appointed trustee for the purposes therein expressed,” and is conditioned for the faithful performance by Mannix of ‘ ‘ all his *481 duties as such trustee, according- to law.” The expression, “such trustee,” refers to Mannix as the trustee appointed by the deed of assignment executed by Purcell, and not as a trustee appointed by the court, or chosen by the creditors; so that, by the literal terms of the bond the sureties became bound for the faithful performance, by Mannix, of his duties as assignee. The meaning of the bond would not be different in any sense, or more cleaily expressed, if the word ‘ ‘ assignee, ’ ’ were substituted for ‘ ‘ trustee. ’ ’
It was also contended at the trial, that Purcell owned no property when the assignment was made, and, as none passed under it to Mannix, the sureties were not liable on the bond. This point does not appear to be insisted upon in argument here; and it is not apparent how it could avail the sureties. It is shown by the record, that Mannix settled his accounts as assignee, in the probate court, the appropriate tribunal for that purpose, which found, upon the settlement, the amount in his hands due his successors in the trust, he having resigned, and ordered its payment to his successors, the defendants in error. Prom that order of the probate court, - Mannix and his sureties united in taking an appeal to the court of common pleas where, upon hearing, a like finding- and order weremade; and errorwas prosecuted from that judgment to the circuit court, by Mannix, and the plaintiffs in error, where, as appears from the record of that court, the judgment of the common pleas was reversed, and by the consent of the plaintiffs in error, as well as the other parties to the action, the court, instead of remanding the case for further trial in the common pleas, proceeded to hear the case and render the judgment which the *482 common pleas should have rendered. And the circuit court thereupon, with the consent of all the parties, as appears from the record, made certain deductions from the amounts charged by the lower courts against Mannix, and further credited the accounts with something over sixty-two thousand dollars paid by Hoadly in compromise of his liability as surety on the bond; leaving’ a balance of $189,-975.83, which the court ordered to be paid to the defendants in error. That judgment of the circuit court remains in full force.
It is the settled law of this state that sureties on the bond of a guardian, or assignee, are in privity with their principal, and so bound and concluded by the findings and judgments of the probate court in the settlement of the trust, that they cannot question their correctness, or dispute the amount found due from the principal. Braiden v. Mercer, 44 Ohio St., 339; Garver v. Tisinger, 46 Ohio St., 56. And though the circuit court was not authorized, without the consent of the parties, to pursue the course it adopted, yet, that having been done by the express consent given in open court for that purpose by these plaintiffs in error, and all the other parties interested, and no at. tempt having been made to set aside its judgment,' they are bound by it, in the same respect as if it had been rendered by the court of common pleas upon a retrial of the cause, after being remanded. It was, therefore, not necessary for the plaintiffs below, to otherwise show at the trial, the amount of assets that passed to Mannix under the assignment, or the amount due from him on the settlement of his accounts; nor was it competent for the plaintiffs in error to contradict the judgment in those particulars. The real contention on this *483 point, of these plaintiffs in error, was not so much that the property and assets with which Mannix was charged in the settlement of his accounts were not received by him from the assignor, Edward Purcell, as that they did not, in fact, belong to him, but belonged to his brother, Archbishop Purcell. But, having been received from Edward, the duty of Mannix was to administer and dispose of the assets under the assignment, unless, and until, he was deprived of them by some one asserting a superior right; and the sureties on his bond, bound themselves for the performance of that duty. They cannot, therefore, avoid their liability by asserting such a right of another person who'is himself making no such claim.
2. Whether the plaintiffs in error were discharged from their liability on the bond, by the release of their co-surety, depends upon the applicability of our statute which authorizes the release of one or more partners or joint debtors without discharging the others, to obligations of that nature, and its effect upon them. It was the well settled law, before the enactment of the statute, that the release of one joint obligor operated to discharge all jointly bound with him who did not consent to the release; and unless that rule has been changed by the statute, in cases like the one before us, the plaintiffs in error cannot be held on the bond. The provisions of the statute, originally adopted in 1857, are contained in sections 3162 to 3166, inclusive, which read as follows :
“Section 3162. When a partnership is dissolved, by mutual consent or otherwise, any partner may make a separate composition or compromise with any creditor of the partnership; and such composition or compromise shall be a full and effectual *484 discharge to the debtor who makes the same, and to him only, of and from all and every liability to the creditor with whom the same is made, according to the terms thereof. ’ ’
“Section 3163. Every such debtor who makes such composition or compromise, may take from the creditor with whom he makes the same a note or memorandum in writing, exonerating him from all and every individual liability incurred by reason of his connection with the partnership, which note or memorandum may be given in evidence by such debtor, in bar of such creditor’s right of recovery against him; and if such liability be by judgment in any court of record in this state, then on a production to and filing with the clerk of such court the note or memorandum, such clerk shall discharge such judgment of record as far as the compromising debtor is concerned.”
“Section 3164. Such compromise or composition with an individual member of a firm shall not be held to discharge the other partners, nor shall it impair the right of the creditor to proceed against such members of the partnership as have not been discharged. And the member of the partnership so proceeded against shall be permitted to set off , any demand against the creditor which could have been set off had the suit been brought against all the individuals composing the firm; nor shall the compromise or discharge of an individual of a firm prevent the other members of the firm from availing themselves of any defense that would have been available had not this chapter been passed, except that they shall not set up the discharge of one individual as a discharge of the other partners, unless it appear that they all were intended to be discharged; but the discharge of any such partner *485 shall be deemed a payment to the creditor equal to the proportionate interest of the partner discharged in the partnership concern.”
“Section 3165. Such compromise or composition of a member of a firm with a creditor of such firm shall in no wise affect the right of the other partners to call on the member who makes it for his ratable portion of- such partnership debt.”
“Section 3166. The above provisions in reference to partners shall extend to other joint debtors, who may, individually, compound or compromise for their joint indebtedness, with the like effect in reference to creditors and to joint debtors of the individual so compromising,' as is above provided in reference to partners.”
It will be noticed that under the provisions of the statute, any partner, after the dissolution of the firm, is authorized to make a separate composition with “any creditor of the partnership;” and such composition operates as a full discharge to the partner who makes it, “and to him only,’’according to its terms, but does not discharge the other partners, or impair the right of the creditor to proceed against them. And the same provisions are expressly extended to all joint debtors. So that the practical questions here are: (1) Were the defendants in error, when. Hoadly was released, ‘ ‘ creditors ’ ’ of the sureties on the bond ? and: (2)Were the latter “joint debtors” within the meaning of the statute? We think both questions must receive an affirmative answer.
The record shows that when the compromise was made with Hoadly, Mannix had resigned as assignee, and the defendants in error had been duly appointed his successors in the trust; and that on the settlement of his accounts in the pro *486 bate court, the balance in Ms hands belonging to the trust had been ascertained, and ordered to be paid to his successors. Section 6341, of the Revised Statutes, requires that on the resignation of an assignee, he shall forthwith file and settle his accounts, and immediately after such, settlement pay over to his successor all moneys found due from him to the trust; and on failure to do so, or to deliver over to his successor all propertjq moneys, books, evidences of title, papers and other effects in any way belonging to the trust, such successor may, by action in the court of common pleas or otherwise, proceed against such assignee and “the sureties on his bond.” A creditor is defined by Bouvier, to be a person “who has a right to require the fulfillment of an obligation or contract. ’ ’ And it is said in Stanly v. Ogden, 2 Root (Conn.), 261, that “he is a creditor who has a right by law to demand and recover of another a sum of money on any account whatever. ” The defendants in error, as successors of Mannix, were entitled to receive the entire assets belong’ing to the trust at the time of his final settlement, and were authorized to enforce the payment and delivery of the same to them by action on his bond; and indeed were the only persons who could do so. And we are of the opinion they were creditors, in the sense contemplated by the statute, of all the obligors of the' bond. True, they were creditors in their representative character only, but not, on that account, any the less creditors; and if creditors, the obligors were debtors, for the terms are correlative. Any one who is under an obligation to pay another a sum of money, comes within tfie legal definition of a debtor; and it is not essential that the obligation be due. The obligation of *487 the sureties on .the bond of Mannix was created when the bond was executed. Their liability accrued when the principal failed to perform his duties. The settlement of his accounts was merely the method prescribed by law for ascertaining the amount and extent of the liability; and, although that settlement had not been finally effected when the compromise was made, the liability existed to an amount equal, at least, to the face of the bond, and the sureties were then joint debtors to that amount, within the meaning of the statute. It was urged in argument, that the term “joint debtors” in the statute, must be limited to principal debtors, because it is used in such connection with the word “partners, ” as shows that- intention. We do not think so. A surety, as well as a principal, may be a debtor, although a right of action on the obligation has not matured; and the phrase “other joint debtors” is broad enough to embrace all persons who are jointly indebted, except partners with respect to whom special provision is made by the preceding sections. We find nothing in the statute indicating an intention to deprive sureties of the benefit of its provisions. It is also contended that the statute is merely declaratory, and does not change the law as it existed prior to its adoption. And as tending to establish that position, it is said the statute is a transcript of a New York statute, which had there received that construction before its adoption in this state. The cases of Bank v. Ibbotson, 5 Hill, 461, and Hoffman v. Dunlop, 1 Barb., 185, are cited in support of this contention. We have examined those cases. The most that can be made from the meager report of them is, that the court seems to draw a distinction between *488 a composition with a partner or joint debtor, and a technical release under seal; holding in the last case that the latter is not within the statute, unless it purports to have been made under it, or makes some reference to it; and intimating the same thing in the first of the cases, though the question was not before the court. The soundness of that holding may well be doubted; for if the release be within the statute, it is not apparent why any reference to the statute should be necessary. In this state, before the passage of the act, it had been held that the discharge of one partner from a partnership liability discharged all of the partners. Westcott v. Price, Wright, 220. And the design of the act no doubt was, to so change that rule, not only as to partners, but as to all joint debtors as well, that a creditor might be enabled to receive payment from one partner or joint debtor, of his proportionate share of the indebtedness, and release him therefrom, without affecting the creditor’s right to collect the balance from the others bound by ' the same obligation. We therefore conclude, that the compromise with, and release of Hoadly, did not discharge the plaintiffs in error from their liability. A question is made, however, as to the extent of that liability. The statute requires that the compromise shall be treated as a payment equal to the proportionate amount of Hoadly’s liability on the bond ; and the other sureties are entitled to have the bond credited accordingly. There being four sureties, the bond was credited with one-fourth of its face. But, it is claimed an agreement was made between the sureties, when the bond was executed, to the effect that Hoadly should be liable to the-extent of onehundred thou *489 sand dollars, and the others in the sum of fifty-thousand dollars each, and they qualified for those amounts respectively; and the discharge of Hoadly, it is contended, entitled the other sureties to a credit for the amount for which he agreed to become liable. It is not claimed that the state, the ’ obligee named in the bond, or the court of probate by which it was approved, was, or could be, a party to such an agreement; and, though it be binding upon the sureties, it is not apparent how the creditors represented by the assigmee or his successors in the trust, could be affected by it. The probate court in approving the bond of an assignee, deals only with its amount and condition, and the sufficiency of the sureties. The court may satisfy itself of the property qualifications of the persons offered as sureties, by their affidavit, or otherwise; and its duty is to do so, in order to protect those beneficially interested in the trust; but such qualification does not apportion the liability incurred by the sureties, according to the amount of property they appear to own. They all become jointly and equally bound to the full amount of the bond, for the performance, by the assignee of the duties of his trust; and the proportionate interest of each, within the contemplation of the statute under consideration, is his proportion of the liability thus incurred, to be determined from the amount of the bond and number of the sureties, and not from any agreement among themselves concerning the extent of their liability. The bond contains the contract between the obligee and obligors, and no agreement among the latter can affect that contract, or interfere with the right of the former to release one of the latter from his proportion of the liability as shown by the bond, *490 without discharging* the others from their proportion, or increase, or diminish the amount which the statute requires shall be treated as paid on the obligation, by reason of such release.
The record discloses that since the release of Hoadly, his co-surety Stewart, has become insolvent, and nothing* can be collected from him; and the question arose, in the consideration of the case, as to whether Walsh and Holland should not have a further credit to the extent of one-third of Stewart’s proportion of the liability; that being what Hoadly’scontributive share thereof would Have been if he had not been released. The question is not made in argument; but Stewart’s insolvency, which is admitted, is referred to for the purpose of . showing the hardships resulting* from an application of the statute to sureties. The answer to the question must depend upon the operation of the statute, which, being in force when the bond was executed, became as much a part of that instrument, as if incorporated in it. The parties .are presumed to have contracted with reference to the provisions of the statute, and to have ’ agreed to all the consequences resulting* from their operation, and from whatever action might be taken by the parties in pursuance of them. By the terms of the statute, the discharge of one partner “shall be deemed a payment to the creditor equal to the proportionate interest of the partner discharged in the partnership concern;” and the compromise by which such discharge is obtained, “shall in no wise affect the right of the other partners to call on the member who makes it, for his ratable proportion of such partnership debt.” But the statute does not provide that the amount of such ratable share for which the com *491 promising partner may be called upon by the other partners, shall be considered a payment on the debt, or credited thereon; nor, that it shall in any way affect the right of the creditor to proceed against the unreleased partners. The adjustment of the rights of the partners with respect to that “ratable share ” is a matter entirely between them, and does not concern the creditor; and so, with respect to any right of contribution arising between the partners, after the compromise is effected. Joint debtors are placed on the same footing. If section 3162 was intended to, and does preserve the right of contribution against the discharged partner or joint debtor, when one or more of the other partners or debtors become insolvent, that right still exists in favor of Walsh and Holland, unless they have lost it otherwise than by the compromise, and may be enforced if they shall ever pay more than their proportionate share of the bond. But that does not entitle them to have the amount they may so recover also credited on their liability. To allow that to be done would make the release a partial defense, contrary to the provisions of the statute. As yet, neither Walsh nor Holland has any claim for contribution, for neither of them has paid any part of Stewart’s proportion of the liability on the bond, or any part of the judgment rendered against them; and the right of eontribur tion cannot arise in favor of either until he shall pay more than his own share of the debt. The rights of the parties under the compromise, accrue when it is completed. As against the creditor it operates as a payment on the debt equal to the proportionate interest of the discharged partner or joint debtor, and for no more; and the creditor is authorized to proceed against the other partners or *492 joint debtors for the balance. The payment is considered made when the compromise is made, and stops interest from that time. The amount is definitely fixed or easily ascertained, which would not be the case if it depended upon rights of contribution subsequently arising’. Those are rights exclusively between the partners or joint debtors themselves, and constitute no defense to the action of the creditor.
3. Hoadly was not a necessary party to the action below, because the trustees were expressly authorized by the statute to credit the bond with the amount paid by him and proceed against the other sureties for the balance. His presence, or absence, could in no way affect their rights. Whether contribution can be enforced against him, in any event, is a question not involved in the case,-and upon which we express no opinion.

Judgment affi/i'med.